**Michael WEAVER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–86–0094–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 20, 1986.

Discretionary Review Refused
March 18, 1987.

⊨538(3)

Wendle Van Smith, Houston, for appellant.

John B. Holmes, Jr., Harris Co. Dist. Atty., Linda A. West, Edward Porter, Lorraine Parker, Harris County Asst. Dist. Attys., Houston, for appellee.

Before EVANS, C.J., and LEVY and DUGGAN, JJ.

## OPINION

LEVY, Justice.

A jury convicted appellant of the offense of driving while intoxicated and assessed punishment at three days confinement and a fine of $100.

The record reveals that on November 2, 1985, Officer K.D. Gebauer of the Pasadena Police Department received a call at 1:32 a.m. regarding a major traffic accident at the intersection of East Belt and Greenshadow in Harris County. Arriving at the scene approximately two minutes after he received the call, Officer Gebauer observed a gray Toyota pick-up lying partly on and partly off the road. An Oldsmobile was stopped on a raised-curb area just north of the pick-up truck.

The appellant was leaning against the front part of the truck, and the officer asked him what happened. The appellant replied, "I was driving down East Beltway 8 and something hit me." The appellant was bleeding from the front of his face, and appeared to be injured. The officer also noticed a moderate odor of alcohol on his breath.

After talking with the appellant, Officer Gebauer noticed a woman lying on her back slightly northeast of the truck, unconscious and bleeding heavily. Inside the Oldsmobile, Gebauer observed a man who appeared to be dead. It was later determined that the deceased, not the appellant, was at fault in the accident.

The officer conducted a second interview with the appellant in the back of a patrol car. The appellant was not then under arrest, but was being questioned as the only witness to the accident. At that time, he admitted he had been drinking earlier.

The officer further testified that appellant seemed a bit "disoriented," "unsure," and "shaky." However, the officer was not sure whether these symptoms resulted from the appellant's injuries or from his possible intoxication. Appellant left the scene of the accident in an ambulance that took him to Bayshore Hospital. Gebauer radioed to have another officer obtain a blood specimen from appellant while he was at Bayshore.

A blood sample was brought back to Officer Gebauer at the scene of the acci-

dent. This blood sample was taken at 2:25 a.m. and indicated that appellant had a blood-alcohol level of .16 percent.

A hospital employee also drew a sample of appellant's blood at 3:45 a.m., which indicated a blood/alcohol level of .18 percent. Both blood sample results were admitted into evidence. Appellant was not arrested until several days after Officer Gebauer received the results from the first blood test.

In his first point of error, appellant contends that the trial court erred in overruling his motion to suppress the results of the blood test ordered by Officer Gebauer because the blood sample was extracted by an unlawful search and seizure of his body.

Appellant argues that because he was conscious, and did not consent to the drawing of his blood, and because the State failed to show any exigent circumstances that would support a warrantless search, the evidence should not have been admitted.

■ As a general rule, the taking of a blood sample is a "search and seizure" within the meaning of art. I, sec. 9, of the Texas Constitution, and the Fourth Amendment to the United States Constitution. *See Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *Aliff v. State,* 627 S.W.2d 166 (Tex.Crim.App. 1982). However, under the Fourth Amendment, consent to obtain a blood sample is not constitutionally required when an accused is under arrest. *Schmerber,* 384 U.S. 757, 86 S.Ct. 1826.

■ Tex.Rev.Civ.Stat.Ann. art. 6701*l*–5 (Vernon Supp.1986) enlarges upon what is constitutionally required and provides that *consent must be obtained* when the person is under arrest. Texas courts have consistently held, however, that article 6701*l*–5 does not apply to persons not under arrest when the blood sample is taken. *See, e.g., Pesina v. State,* 676 S.W.2d 122, 125 (Tex. Crim.App.1984); *Aliff,* 627 S.W.2d at 168; *Darland v. State,* 582 S.W.2d 452 (Tex. Crim.App.1979). In the present case, the appellant was not under arrest when the blood sample was taken and, therefore, article 6701*l*–5 does not apply. Appellant's consent was not required under the statute. *See Aliff,* 627 S.W.2d at 169; *Burkhalter v. State,* 642 S.W.2d 231 (Tex.App.—Houston [14th Dist.] 1982, no pet.).

■ The warrantless extraction of a blood sample, despite the lack of an arrest, need not violate the Fourth Amendment where certain exigencies exist. In *Aliff,* for example, the Court of Criminal Appeals held that the warrantless drawing of the defendant's blood, while he was unconscious, did not violate the Constitution due to the rapid rate at which alcohol diminishes in the blood, and because a police officer had probable cause to arrest the defendant after observing him drive erratically at speeds in excess of 100 miles per hour before colliding with another vehicle. *Id.* at 166.

Since *Aliff,* other courts have permitted a warrantless seizure of a blood sample "because of the exigency of rapidly dissipating alcohol," and because the police officers had probable cause to arrest the accused. In *Pesina,* 676 S.W.2d at 125, the defendant had been found by a police officer under the wheel of a wrecked pick-up with a strong odor of alcohol on his breath. Another police officer ordered a blood test performed while the defendant was unconscious. In upholding the warrantless search, the Court reaffirmed its *Aliff* opinion and held that a warrantless search is justified where there is a bona fide danger of the alcohol dissipating from the blood before the evidence can be gathered, and where the officer had probable cause to arrest the defendant. 676 S.W.2d at 127. *See also Burkhalter v. State,* 642 S.W.2d 231 (police officer observed the defendant collide with another vehicle and then speed off without stopping); *Hayes v. State,* 634 S.W.2d 359 (Tex.App.—Amarillo 1982, no pet.) (evidence undisputed that the defendant was intoxicated when he drove a vehicle the wrong way down a public street, and collided with another vehicle).

In the present case, the State argues that the same exigent circumstances that

existed in *Aliff* and *Pesina* are present here: time was of the essence in obtaining a blood specimen for alcohol concentration analysis, and Officer Gebauer had probable cause to arrest the appellant because he had a moderate odor of alcohol on his breath. The man driving the other vehicle had been killed, and the appellant told the officer that he had been driving, alone in the car, when something hit him. Thus, the State contends that appellant's consent was not necessary to render the results of the test admissible.

Moreover, the State argues that even if the admission of the blood sample had been error, it would not require reversal in view of the admission into evidence of the second blood sample taken by the hospital for analysis and treatment purposes. But the State's argument is not tenable if its effect is to ignore or vitiate Tex.Code Crim.P. Ann. art. 38.23 (Vernon 1979), which provides in pertinent part:

No evidence obtained by an officer *or other person* in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case. (Emphasis supplied.)

■ It of course follows that illegally obtained evidence, whether procured by private individuals or by police officers, is strictly inadmissible in Texas criminal proceedings, and our Code thus provides broader protection than the comparable Fourth Amendment. Where the State is not involved in obtaining the blood sample, or the search is "reasonable" under the circumstances, the constitutional prohibition against *unreasonable* searches and seizures does not apply. *See Vargas v. State*, 542 S.W.2d 151, 153 (Tex.Crim.App. 1976), *cert. denied*, 429 U.S. 1109, 97 S.Ct. 1144, 51 L.Ed.2d 562 (1977); *Hayes v. State*, 634 S.W.2d at 363. Appellant has not demonstrated State involvement in the hospital's obtaining the blood sample.

■ We agree that the second blood sample was not taken at the State's re-

quest and was admissible. That test having indicated appellant's blood level was .18 percent, any error in the admission of the first blood test was rendered harmless because proof of appellant's intoxication was satisfied by other admissible evidence. *See generally Lovel v. State*, 538 S.W.2d 630 (Tex.Crim.App.1976); *Sinast v. State*, 688 S.W.2d 631 (Tex.App.—Corpus Christi), *pet. ref'd per curiam*, 698 S.W.2d 153 (Tex. Crim.App.1985). The first point of error is overruled.

In the second point of error, appellant contends that the evidence was insufficient to support a finding that he was operating a motor vehicle on a public road at the time of the alleged offense.

■ The gravamen of the offense under Tex.Rev.Civ.Stat.Ann. art. 6701*l*–1 (Vernon Supp.1986) is the operation of a motor vehicle, in a public place, while intoxicated. *See Johnson v. State*, 517 S.W.2d 536, 538 (Tex.Crim.App.1975); *Coleman v. State*, 704 S.W.2d 511, 512 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd). It is well established that the accused's extra-judicial confession cannot, by itself, establish the essential elements of the offense. *See Threet v. State*, 157 Tex.Crim.R. 497, 250 S.W.2d 200 (1952); *Coleman v. State*, 704 S.W.2d at 512.

■ Thus, in order to fix the time of an accused's unlawful driving to support a conviction for driving a motor vehicle while intoxicated, there must be some independent evidence of: (1) how recently the vehicle had been driven, *Rawls v. State*, 167 Tex.Crim.R. 106, 318 S.W.2d 662 (1958); or (2) how much time had elapsed between the accident and the arrival of the police officer, *Sinast v. State*, 688 S.W.2d at 632, so as to furnish the jury with an informed basis for determining the relationship, if any, between the accused's driving and his intoxication, if proven. Indications that the accused was intoxicated at the time the police arrived do not in themselves prove such intoxication at the prohibited time, i.e., when the accused was driving. In short, absent any evidence in the record

fixing the time of the accident or the driving upon a public place, the evidence is insufficient to show that the defendant drove at the time he was intoxicated. 688 S.W.2d 632.

Recently, this Court decided a similar issue in *Coleman v. State*, 704 S.W.2d 511. In *Coleman*, two Houston police officers were dispatched to the scene of a traffic accident. Upon their arrival, the officers questioned several of the people standing near the damaged vehicles as to who had been driving the rear vehicle. The defendant answered that he had. One of the officers noticed that the defendant had a strong odor of alcohol on his breath, was unsure of his balance, and swayed when he walked. The defendant also failed a field sobriety test, and was placed under arrest. We reversed the conviction and held that even though there was sufficient evidence to show that the defendant was intoxicated when the officers arrived, there was no evidence, other than defendant's own extrajudicial confession, to show either that he was *driving* the vehicle or that he was *intoxicated* while driving. *Id.* at 512.

The record in the present case reflects that a friend of the appellant, Hugo Guerra, testified that on the night of the accident, he and the appellant shared a six-pack of beer on their way to a beer garden, where they each had another beer. At approximately 10:30 p.m., they went to a Halloween party. Guerra drove the appellant's "little mini truck" to the party. They each had another "cup" of beer and some hors d'oeuvres, and then left at approximately 12:30 a.m. They returned to the beer garden, and appellant took another few swallows of beer and left at approximately 1:15 to 1:20 a.m. He did not seem to Guerra to have been intoxicated at that time. During the hours they were together, Guerra observed appellant drink a total of five beers.

The scene of the accident is approximately four miles from the location of the beer garden. Officer Gebauer was informed of the accident at 1:32 a.m., and arrived at the scene at 1:34. Appellant was found leaning against a grey Toyota truck, bleeding, and with a moderate odor of alcohol on his breath. No field-sobriety test was given to appellant, and the officer could not tell whether the symptoms of disorientation suffered by appellant were due to his injuries or to intoxication. Officer Gebauer testified that he could not actually determine if appellant was intoxicated until he received the results of the blood test taken more than an hour after appellant had left the beer garden.

The State's expert witness, Floyd E. McDonald, testified that after a person stops drinking alcohol, the concentration of alcohol begins to decrease as the liver removes it from the body. However, it takes a short while for the alcohol to get into the blood stream, and after one stops drinking, if his stomach is empty, it takes another 30 minutes for his blood to reach its maximum alcohol concentration. If he has food in his stomach, it might take two hours to get to the maximum. McDonald was unable to testify that if appellant had quit drinking at 12:30 a.m., the alcohol level in his blood would have reached at least .10 percent by 1:15 a.m. or 1:20 a.m., the time of the accident.

 Viewed in its entirety, the evidence indicates that the appellant had been drinking intermittently for several hours before the accident; that he and Hugo Guerra were drinking at a beer garden located approximately four miles from the scene of the accident when appellant left, which departure occurred about 15 minutes before Officer Gebauer was dispatched to the accident; that appellant drove a "small mini truck"; that he was found bleeding from the face, leaning against a small Toyota truck shortly after the accident, either dazed or intoxicated; and that at 2:25 a.m., the blood/alcohol level in his body was .16. In considering sufficiency of the evidence, whether direct or circumstantial, the evidence is to be viewed in the light most favorable to the verdict, to determine whether any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Jack-*

*son v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Wilson v. State,* 654 S.W.2d 465 (Tex.Crim.App.1983); *Denby v. State,* 654 S.W.2d 457 (Tex.Crim. App.1983). We conclude that these circumstances are sufficient to corroborate appellant's admissions to Officer Gebauer that he was operating the vehicle on the occasion in question. Appellant's second point of error is overruled.

The judgment of the trial court is affirmed.